## Ford, Drainage Commissioner v. Fischer.

(Decided March 21, 1924.)

### Appeal from Daviess Circuit Court.

1. Process—Evidence Held Not Sufficiently Clear to Impeach Return of Sheriff of Service of Notice.—In an action to enjoin drainage commissioner from collecting assessment on the ground that plaintiff was never served with any notice of proceedings to establish the drainage district, evidence held insufficiently clear, positive, and convincing to impeach the return of service made by the sheriff.

2. Process—Evidence to Impeach Return Must be Clear, Positive, and Convincing.—In an action to enjoin drainage commissioner from collecting assessment upon the ground that plaintiff was never served with any notice of proceedings to establish the

drainage district, evidence to impeach a return of the sheriff showing service of notice must be clear, positive, and convincing.

J. R. HAYS for appellant.

T. F. BIRKHEAD and ALBERT B. OBERST for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In 1912, J. H. Hickman and others filed their petition with the county court of Daviess county seeking to establish a drainage district for the straightening of Panther creek, and draining its contiguous lands. The proceedings progressed and the appointed viewers filed their report showing the persons whose lands would be affected, upon which summons was issued for each of them, including appellee and plaintiff below, George A. Fischer. The summons for appellee, which included the names of a great number of other landowners, was issued by the clerk of the Daviess county court on July 24, 1913, and the return of the sheriff thereon shows that it was executed on appellee by B. T. Lancaster, a deputy sheriff, on August 16, 1913. Thereafter the proceedings progressed and a number of appeals on different branches thereof were prosecuted to this court and finally appellee was assessed as his proportionate part of the cost of the ditch the sum of $813.40. The drainage commissioner was about to take the necessary steps to collect from appellee that sum, or to issue bonds against his lands for it, when he, on February 24, 1922, filed this equity action in the Daviess circuit court to enjoin the officer from collecting the assessment or any part of it, or taking any steps to make it a lien against plaintiff's property upon the ground that he was never served with notice of the proceedings to establish the drainage district, nor did he enter his appearance therein or in any manner become a party thereto. He did not allege in his petition that the county court judgment against him was procured by any fraud of any of the parties, nor by any mistake of the officer in returning the summons as executed on him. A demurrer to the petition was overruled and an answer was filed denying the allegations of the petition and affirmatively pleading the issual of a summons for appellee in the county court proceedings and its service on him by the sheriff of the county through a deputy sheriff; and the summons with the officer's return was filed as an exhibit with the answer. Appellee for the first time in his reply averred that the return of the officer showing the service

of the summons on him was a mistake. Appropriate pleadings made the issues and upon submission to the court it was held, under the evidence adduced, that plaintiff had never been served in the drainage district proceedings, and the court granted the injunction prayed for and the drainage commissioner prosecutes this appeal.

It will be observed that this action was brought in a different court from the one in which the attacked judgment was rendered, and it seeks to annul that judgment, notwithstanding it affirmatively appears in the record of that proceeding that duly executed service on the plaintiff was made therein. There is much confusion in the law, and from which the cases in this court are not exempt, as to the proper procedure in such cases, and as to the extent, if any, of the relief which may be granted, and especially so when the attack is made in a different court from the one in which the alleged spurious judgment was rendered. Since, however, the Daviess circuit court had jurisdiction to issue injunctions of the character prayed for, and since plaintiff selected his own forum to obtain the relief to which he claims he is entitled, we have concluded not to enter into a discussion of the doctrine relating to collateral and direct attacks of judgments, or the court in which they should be made. The adoption of a particular remedy for the accomplishment of a particular purpose does not necessarily mean that the court would not have *jurisdiction,* although the adopted remedy was not the appropriate one for the purpose, and in such case the situation is unlike a resort to a court having no jurisdiction of the adopted remedy, but is only an erroneous procedure and is, therefore, not followed by the same consequences that result from an application to a court having no jurisdiction to administer the remedy. In the latter case even consent can not confer jurisdiction, but in the former it may do so. We will, therefore, in this opinion waive all such questions and determine the case upon its merits as developed by the evidence heard on the trial.

In contradicting in his testimony the return of the sheriff on the summons that was issued in the drainage district proceedings, and in denying that he was ever served therein, plaintiff was asked, ''Now can you say that there was no service of process served on you in that action?'' and he answered, ''No, sir, there was no such paper served on me in that case, because I always keep

such papers as that. He (the deputy sheriff who made the return) did serve papers in ditch cases, but he certainly never did serve any papers on me in that case.'' He then proceeded to say that he had been served with a summons in two other like cases and stated that there was another man living in the same community by the same name, but he had never seen that man, nor did he know where he resided, nor did he produce him on the trial of this case nor introduce other witnesses who ever saw or heard of him. Neither does it appear anywhere in the record that any such man owned a foot of land in the involved territory or even anywhere in Daviess county; and the only reason plaintiff assigned for the existence of another George A. Fischer was that he (plaintiff) had gotten mail which he concluded was intended for some other individual. In his original deposition plaintiff was unable to state where he was on August 16, 1913, the date of the return, nor what day of the week it was or where he was any of the days immediately preceding and following that date. However, in a rebuttal deposition he testified that the date of the return was on Saturday and that he, following his profession as a carpenter, was at work in the construction of a building not far from his residence, and that he was at that building from early morning until late in the afternoon and that the deputy sheriff did not see him or serve any summons on him during that day. He introduced two workmen on the building who stated, in substance, that if the deputy was at that building on that date they did not see him nor did any officer so far as they knew serve any summons on plaintiff at any time during that day, although they were not in his imemdiate presence at all times throughout the day. It will thus be observed that one of the principal reasons why plaintiff was assured that no service was had on him in the county court proceeding was because he had failed to preserve any such summons as having been delivered to him, and which he claims was his usual custom and practice to do.

On the other hand, the deputy sheriff who made the return testified that he had been serving in that capacity between nine and ten years, and that his territory included the residence of plaintiff; that there was a very great number of persons to be served in the Panther creek drainage district proceedings, as is shown by the copy of the summons filed with the record, and that he would sometimes be away from the sheriff's office in Owensboro for two or three days at a time and would deliver the

summons to the various defendants and indicate thereon the ones so served, after which, when he returned to the office in Owensboro, he would formally write out and sign the return, and which course he pursued in this case, and which shows that the actual service may have preceded the return date. He stated that he was personally acquainted with the plaintiff, Fischer, as well as his neighbor, John Collignon, who lived just across the road, and positively stated that he served the summons on all the parties named in his return, including plaintiff and Collignon, the latter of whom, as it appears from this record, is also prosecuting a similar action to obtain the same relief. The deputy sheriff also says that his best recollection was that he served plaintiff at his residence and not at any building in the neighborhood which he was constructing; and that at the same time he executed the summons on Collignon, who lived just across the road from plaintiff.

Section 3760 of our statutes provides, in substance, that no fact officially stated by an officer in respect to a matter about which he is legally required to make a statement shall be called in question "except upon the allegation of fraud in the party benefited thereby, or mistake on the part of the officer, unless in a direct proceeding against the officer or his sureties." As we have seen, no allegation of fraud on the part of any one benefited, or mistake on the part of the officer, was made in the *petition,* but if we treat that omission as supplied by the allegation of a mistake on the part of the sheriff in this case made for the first time in the *reply,* as being unnecessary to sustain the action, we are then confronted with the question as to whether the evidence was sufficient to grant the relief sought. On that question the text in 15 R. C. L. 774, says: "Even where the power of equity to grant relief in the case of a false return is conceded (which we have done for the purposes of this case), it has been held that in such cases a court should not act except upon clear, satisfactory and convincing proof." Dealing with the same question of practice, this court adopted the rule of the text in the case of Utter, Adams and Allen v. Smith, et al., 25 Ky. L. R. 2272, wherein it used this language:

> "When a judgment has been obtained upon process duly returned executed by one who is conceded to be a person authorized to execute it, the court

should not set aside such a judgment unless the evidence is clear, positive and convincing that it was obtained by the fraud of the plaintiff or by the mistake of the officer in executing the summons. Otherwise judgments settling the rights of the parties and giving remedies for the enforcement of these rights could never be regarded as permanent, but would be liable to be set aside and the rights settled thereby be reopened, when the facts, not only appertaining to the service of the summons, but the merits of the controversy, had been forgotten, or rendered unavailing by reason of the death of the parties or their witnesses.''

We still adhere to that rule as well as the reasons therefor, and applying it to the testimony in this case, we have no hesitancy in declaring that it was insufficient to impeach the return made by the sheriff, especially in the light of the latter's testimony in support of it.

It is, therefore, our conclusion that the court erred in granting the injunction, and the judgment is reversed with directions to dismiss the petition.